UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

KERVIN ABRAHAM MORALES RONDON,

Petitioner,

v.

MICHAEL BERNACKE, *et al.*,

Respondents.

Case No. 2:25-cv-01979-RFB-BNW

**ORDER**

## I. INTRODUCTION

This case is one of a rapidly growing number before this Court challenging the federal government's reading of the Immigration and Nationality Act (INA) to authorize mandatory detention of all noncitizens charged with entering the United States without inspection.[1] The

---

[1] This Court has already granted petitioners relief—both preliminary and on the merits—in thirty-one similar challenges. See Escobar Salgado v. Mattos, No. 2:25-cv-01872-RFB-EJY 2025 WL 3205356 (D. Nev. Nov. 17, 2025); see also Herrera v. Knight, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792 (D. Nev. Sept. 5, 2025); Vazquez v. Feeley, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082 (D. Nev. Sept. 17, 2025); Roman v. Noem, No. 2:25-CV-01684-RFB-EJY, 2025 WL 2710211 (D. Nev. Sept. 23, 2025); Carlos v. Noem, No. 2:25-CV-01900-RFB-EJY, 2025 WL 2896156 (D. Nev. Oct. 10, 2025); E.C. v. Noem, No. 2:25-CV-01789-RFB-BNW, 2025 WL 2916264 (D. Nev. Oct. 14, 2025); Perez Sanchez v. Bernacke, No. 2:25-CV-01921-RFB-MDC (D. Nev. Oct. 17, 2025); Aparicio v. Noem, No. 2:25-CV-01919-RFB-DJA, 2025 WL 2998098 (D. Nev. Oct. 23, 2025); Dominguez-Lara v. Noem, No. 2:25-CV-01553-RFB-EJY, 2025 WL 2998094 (D. Nev. Oct. 24, 2025); Bautista-Avalos v. Bernacke, 2:25-CV-01987-RFB-BNW (D. Nev. Oct 27, 2025); Arce-Cervera v. Noem, No. 2:25-CV-01895-RFB-NJK, 2025 WL 3017866 (D. Nev. Oct. 28, 2025); Alvarado Gonzalez v. Mattos, No. 2:25-CV-01599-RFB-NJK (D. Nev. Oct. 30, 2025); Rodriguez Cabrera v. Mattos, No. 2:25-cv-01551-RFB-EJY, 2025 WL 3072687 (D. Nev. Nov. 3, 2025); Berto Mendez v. Noem, No. 2:25-cv-02602-RFB-MDC,

executive branch now takes the position that the INA, specifically 8 U.S.C. § 1225(b)(2)(A), requires the detention of all undocumented individuals during the pendency of their removal proceedings, which can take months or years. According to this interpretation, detention without a hearing is mandatary, no matter how long a noncitizen has resided in the country, and without any due process to ensure the government has a legitimate, individualized interest in detaining them.

According to a leaked internal memo, the Department of Homeland Security (DHS), in conjunction with the Department of Justice (DOJ) adopted this new legal position on a nationwide basis on July 8, 2025.[2] It subjects millions of undocumented U.S. residents to prolonged detention without the opportunity for release on bond, in contravention of decades of agency practice and robust due process protections hitherto afforded to such residents under 8 U.S.C. § 1226(a).[3] On September 5, 2025, the Bureau of Immigration Appeals (BIA) issued a precedential decision

---

2025 WL 3124285 (D. Nev. Nov. 7, 2025); Cornejo-Mejia v. Bernacke, No. 2:25-cv-02139-RFB-BNW, 2025 WL 3222482 (D. Nev. Nov. 18, 2025); Lucero Ortiz v. Bernacke, No. 2:25-cv-01833-RFB-NJK, 2025 WL 3237291 (D. Nev. Nov. 19, 2025); Perez Sales v. Mattos, No. 2:25-cv-01819-RFB-BNW, 2025 WL 3237366 (D. Nev. Nov. 19, 2025); Hernandez Duran v. Bernacke, No. 2:25-cv-02105-RFB-EJY, 2025 WL 3237451 (D. Nev. Nov. 19, 2025); Cabrera-Cortes v. Knight, No. 2:25-cv-01976-RFB-MDC, 2025 WL 3240971 (D. Nev. Nov. 20, 2025); Jacobo Ramirez v. Noem, No. 2:25-cv-02136-RFB-MDC, 2025 WL 3270137 (D. Nev. Nov. 24, 2025); Garcia-Arauz v. Noem, No. 2:25-cv-02117-RFB-EJY, 2025 WL 3470902 (D. Nev. Dec. 3, 2025); Silva Hernandez v. Noem, No. 2:25-cv-02304-RFB-EJY, 2025 WL 3470903 (D. Nev. Dec. 3, 2025); Reyes Cristobal v. Bernacke, No. 2:25-cv-02231-RFB-EJY, 2025 WL 3485770 (D. Nev. Dec. 4, 2025); Carrillo Fernandez v. Knight, No. 2:25-cv-02221-RFB-BNW, 2025 WL 3485800 (D. Nev. Dec. 4, 2025); Pilar Torres v. Bernacke, No. 2:25-cv-02270-RFB-EJY, 2025 WL 3514615 (D. Nev. Dec. 8, 2025); Nolasco-Gomez v. Noem, No. 2:25-cv-02217-RFB-DJA, 2025 WL 3514758 (D. Nev. Dec. 8, 2025); Ramirez-Contreras v. Noem, No. 2:25-cv-02218-RFB-EJY, 2025 WL 3514681 (D. Nev. Dec. 8, 2025); Rodas v. Noem, No. 2:25-cv-02216-RFB-BNW, 2025 WL 3514680 (D. Nev. Dec. 8, 2025); Perdomo-Gonzalez v. Noem, No. 2:25-cv-02121-RFB-EJY, 2025 WL 3514758 (D. Nev. Dec. 8, 2025); Hernandez Isidoro v. Bernacke, No. 2:25-cv-02312-RFB-NJK (D. Nev. Dec. 8, 2025); Serrano Gonzalez v. Knight, No. 2:25-cv-02081-RFB-BNW (D. Nev. Dec. 9, 2025).

[2] See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025), https://perma.cc/5GKM-JYGX.

[3] See Kyle Cheney & Myah Ward, Trump's new detention policy targets millions of immigrants. Judges keep saying its illegal., Politico (Sept. 20, 2025 at 4:00 p.m. EDT), https://www.politico.com/news/2025/09/20/ice-detention-immigration-policy-00573850, https://perma.cc/L686-E97L.

1  adopting this new interpretation of the government's detention authority under the INA. See Matter
2  of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) ("Hurtado"). After Hurtado, immigration judges
3  no longer have authority to hear bond requests or grant bond to noncitizens present in the U.S.
4  who entered without inspection. Id.

5        The overwhelming majority of district courts across the country, including this Court, that
6  have considered the government's new statutory interpretation have found it incorrect and
7  unlawful. See Escobar Salgado v. Mattos, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356 (D.
8  Nev. Nov. 17, 2025) (finding "that the plain meaning of the relevant statutory provisions, when
9  interpreted according to fundamental canons of statutory construction," as well as the legislative
10 history and decades of consistent agency practice establish "that the government's new
11 interpretation and policy under [§ 1225(b)(2)(A)] is unlawful."); see also, Patel v. McShane, No.
12 CV 25-5975, 2025 WL 3241212, at *1 (E.D. Pa. Nov. 20, 2025) (collecting at least 282 decisions
13 from district courts finding the application of §1225(b)(2)(A) to noncitizens residing in the United
14 States unlawful). A nationwide class has also been certified, and declaratory relief granted to all
15 class members holding that they are being detained without a bond hearing unlawfully. See
16 Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3289861 (C.D. Cal. Nov. 20,
17 2025); Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov.
18 25, 2025).

19       Petitioner is currently detained without the opportunity for release on bond in the custody
20 of Federal Respondents at Nevada Southern Detention Center (NSDC), pursuant to this new
21 detention "policy." He asserts the application of § 1225(b)(2) to him is unlawful under the INA,
22 and his continued detention violates the Due Process Clause of the Fifth Amendment. He seeks a
23 writ of habeas corpus requiring that he be released unless Respondents provide him with a bond
24 hearing under § 1226(a) within seven days of the Court's Order. For the reasons set forth below,
25 the Petition is granted and the Court orders Respondents to provide Petitioner a constitutionally
26 adequate bond hearing by **December 15, 2025,** or release him.

27
28     **II.**    **PROCEDURAL HISTORY**

On October 15, 2025, Petitioner filed his Petition for a Writ of Habeas Corpus. ECF No. 1. On October 22, 2025, the Court ordered Respondents to show cause why the Writ should not be granted and enjoined Respondents from transferring Petitioner out of the District of Nevada to preserve its jurisdiction over Petitioner's claims. ECF No. 3.

On October 24, 2025, Respondents' counsel filed a notice of appearance, and on October 28, filed an emergency motion for an extension of time to respond to the Order to Show Cause, citing the need for additional time due to the shutdown of the federal government. ECF Nos. 4, 6. Respondents filed their Return to the Petition on October 31, 2025. ECF No. 8. Petitioner did not file a traverse.

The Court's Order follows.

### III.   BACKGROUND

#### A.   Legal Background

The Court fully incorporates by reference the legal background regarding the government's detention authority and removal proceedings under the INA, as well as the government's new statutory reading and mass detention "policy," set forth in its ruling in Escobar Salgado, 2025 WL 3205356, at *2-6 (D. Nev. Nov. 17, 2025).

#### B.   Petitioner Morales Rondon

The Court makes the following findings of fact relevant to Petitioner. Petitioner Morales Rondon is a citizen of Venezuela who has resided in the United States since March 2024 and lives in Las Vegas, Nevada. On March 10 or 11 of 2024, DHS, after taking Petitioner into custody in Texas, determined Petitioner was inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), for entering the United States without inspection and released him on his own recognizance under 8 USC § 1226. ECF No. 2-2. Petitioner has one daughter, who currently lives in Venezuela, and prior to his detention, Petitioner worked as a line cook at Maggiano's Little Italy in Las Vegas. He has no criminal history outside of the September 2025 arrest that led to his detention; neither party has indicated that this arrest led to a conviction of any kind. He has been detained by DHS for nearly three months after being arrested on September 12, 2025 while driving.

1    Petitioner has an asylum application currently pending with the Las Vegas Immigration
2    Court based on the persecution Petitioner suffered in his home country of Venezuela based on his
3    political opinion. On November 26, 2025, Petitioner was ordered removed, however, this order is
4    not yet administratively final, and Respondents do not argue this order is the basis for Petitioner's
5    continued detention. See ECF No. 10; see also Cui v. Garland, 13 F.4th 991, 996 (9th Cir. 2021)
6    ("A removal order 'become[s] final upon the earlier of (i) a determination by the [BIA] affirming
7    such order; or (ii) the expiration of the period in which the alien is permitted to seek review of
8    such order by the [BIA].'") (citing 8 U.S.C. § 1101(a)(47)(B)); see also 8 CFR § 1241.1(a) ("An
9    order of removal made by the immigration judge at the conclusion of proceedings under [8 U.S.C.
10   § 1229a] shall become final [u]pon dismissal of an appeal by the Board of Immigration Appeals").

### IV.    LEGAL STANDARDS

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "Its province, shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001); see also Demore v. Kim, 538 U.S. 510, 517 (2003); Trump v. J. G. G., 604 U.S. 670, 672 (2025) (describing immigration detainees' challenge to their confinement and removal as falling "within the 'core' of the writ of habeas corpus.") (*per curiam*) (citations omitted). "The application for the

writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." Yong v. I.N.S., 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## V. DISCUSSION

As an initial matter, the Court grants Respondents' Emergency Motion to Extend Time (ECF No. 6) to file their Return, *nunc pro tunc*. Under Federal Rule of Civil Procedure 6(b), a court may "for good cause," extend a deadline so long as the request is made before the original deadline. Fed. R. Civ. P. 6(b)(1)(A). The Court finds that this request was made prior to the Respondents' original deadline of October 29, 2025, and that there was good cause sufficient to grant Respondents' brief, two-day extension to October 31, 2025, given the federal government shutdown and associated widespread furloughs that were ongoing at the time of the request.

### A. Jurisdiction

The Court has habeas jurisdiction to review Petitioner's challenge to the lawfulness of his detention, because the relevant jurisdiction stripping provisions of the INA, 8 U.S.C. § 1252 do not apply. See Escobar Salgado, 2025 WL 3205356, at *8-10; Hernandez Duran v. Bernacke, 2:25-cv-2105-RFB-EJY, 2025 WL 3237451, at *4 (Nov. 19, 2025). In evaluating the jurisdiction stripping provisions of the INA, the Court is guided "by the general rule to resolve any ambiguities in a jurisdiction-stripping statue in favor of the narrower interpretation and by the strong presumption in favor of judicial review." Arce v. United States, 899 F. F.3d 796, 801 (9th Cir. 2018) (*per curiam*) (internal quotations and citations omitted).

In their Return to the Petition, Respondents assert that Petitioner's habeas challenge to the lawfulness of his detention is jurisdictionally barred by 8 U.S.C. §§ 1252(g), 1252(a)(5), and 1252(b)(9). As this Court has previously ruled, and which is incorporated by reference herein, Respondents' arguments under those jurisdiction stripping provisions of the INA are foreclosed by Ninth Circuit and Supreme Court precedent. See Escobar Salgado, 2025 WL 3205356, at *8-10.

### B. Statutory Question

1    Petitioner Morales Rondon challenges the government's new interpretation of the INA, and
2  his detention thereunder, as unlawful.[4] While Respondents assert that § 1225(b)(2) applies to
3  Petitioner and mandates his detention without a bond hearing, Petitioner argues Respondents'
4  interpretation of the statutory scheme of §§ 1225 and 1226 is flawed, contradicting both the
5  statutory framework and the decades of agency practice applying § 1226(a) to people like
6  Petitioner. This Court agrees with Petitioner and fully incorporates by reference its holding and
7  findings in Escobar Salgado v. Mattos. 2025 WL 3205356, at *10-22.

8    Petitioner is a longtime U.S. resident, who entered the country without inspection, and who
9  was arrested and detained by ICE in Nevada, far from any port of entry. In addition, Petitioner has
10 no criminal history outside the arrest that gave rise to his detention, let alone any criminal
11 convictions that would subject him to detention under § 1226(c). Accordingly, the Court finds
12 Petitioner is subject to detention under § 1226(a) and its implementing regulations, not §
13 1225(b)(2)(A), and that the government's new interpretation and policy under that provision is
14 unlawful. Escobar Salgado, 2025 WL 3205356, at *10-22.

**C. Due Process**

16   Petitioner also challenges his ongoing detention without the opportunity for release on
17 bond under § 1225(b)(2) as unconstitutional under the Due Process Clause of the Fifth
18 Amendment. Even if this Court were to accept the government's new reading of § 1225(b)(2), it
19 would still have to contend with Petitioner's due process challenge on this basis. Respondents
20 assert that Petitioner's due process rights are not violated by detention without opportunity for
21 release on bond, citing to the Supreme Court's upholding of detention without bond hearings under
22 § 1226(c) in Demore. See ECF No. 21 at 2-3, 19 (citing Demore, 538 U.S. at 522, 531). However,
23 Demore's holding was based on the government establishing a particular interest in detaining a
24 limited class of noncitizens who had been convicted of certain crimes and were therefore
25 statistically more likely to abscond from removal proceedings. Demore, 538 U.S. at 526-27. In

---

[4] The Respondents have indicated that the basis for Petitioner's detention is their interpretation of the INA's statutory scheme, with respect to §§ 1225 and 1226. They have not asserted, nor does this order address, any authority to detain Petitioner based the removal order issued to Petitioner on November 26, 2025, which is not administratively final. See ECF No. 10.

1  addition, the Court noted that detention without bond of noncitizens in that narrow class satisfied
2  due process because the convictions had been obtained with the "full procedural protections our
3  criminal justice system offer." Id. at 513-14. That interest is plainly not implicated in this case,
4  where Petitioner has no criminal convictions. Furthermore, the government has not shown it has
5  an individualized purpose in detaining Petitioner.
6        This Court further incorporates by reference the legal authorities and standards set forth in
7  Escobar Salgado v. Mattos regarding the due process rights of noncitizens. 2025 WL 3205356, at
8  *22-24. For the following reasons, the Court finds that Petitioner is currently being detained
9  without the opportunity for release on bond in violation of his procedural and substantive due
10 process rights.

                                              1.   Procedural Due Process

12       To determine whether detention violates procedural due process, courts apply the three-
13 part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland,
14 53 F.4th 1189, 1203-07 (9th Cir. 2022) (collecting cases and applying the Mathews test in a similar
15 immigration detention context and holding "[u]ltimately, Mathews remains a flexible test that can
16 and must account for the heightened governmental interest in the immigration detention context").
17       Under Mathews, the courts weigh the following three factors: (1) "the private interest that
18 will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest
19 through the procedures used, and the probable value, if any, of additional or substitute procedural
20 safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and
21 administrative burdens that the additional or substitute procedural requirement would entail."
22 Mathews, 424 U.S. at 335.
23       The first Mathews factor considers the private interest affected by the government's
24 ongoing detention of Petitioner without the opportunity for release on bond. See Mathews, 424
25 U.S. at 335. Here, that is Petitioner's interest in being free from imprisonment, "the most elemental
26 of liberty interests." Hamdi, 542 U.S. at 529. In this country, liberty is the norm and detention "is
27 the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987); see also
28 Rodriguez Diaz, 53 F.4th At 1207 ("An individual's private interest in freedom from prolonged

detention is unquestionably substantial.") (citations omitted).

Additionally, Petitioner's liberty interest is not diminished by any final order of removal, or the availability of any existing process to challenge Respondents' decision to detain him without bond. Cf. id. at 1208 (holding the habeas petitioner's liberty interest was diminished by the fact that he was subject to a final order of removal, had already been afforded an individualized bond hearing, and had additional process available to him through a further bonding hearing before an IJ upon a showing of materially changed circumstances).

Second, the Court considers "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional procedures." Mathews, 424 U.S. at 335. There are no existing procedures whatsoever for Petitioner to challenge his detention pending the conclusion of his removal proceedings without the opportunity for release on bond. The risk of erroneous deprivation is extraordinarily high where ICE and DHS agency officials have sole, unguided, and unreviewable discretion to detain Petitioner without any individualized showing of why his detention is warranted, nor any process for Petitioner to challenge the exercise of that discretion. The likelihood of erroneous deprivation caused by this lack of process is demonstrated by numerous prior cases before this Court where an IJ held a bond hearing for a petitioner prior to Hurtado and found that the government had not established a justification for detention. See, e.g., Escobar Salgado, 2025 WL 3205356; Aparicio v. Noem, No. 2:25-CV-01919-RFB-DJA, 2025 WL 2998098 (D. Nev. Oct. 23, 2025); Berto Mendez v. Noem, No. 2:25-cv-02602-RFB-MDC, 2025 WL 3124285 (D. Nev. Nov. 7, 2025). Likewise, given that Petitioner Morales Rondon has no criminal convictions, has significant ties in the country, and Respondents have not asserted he is dangerous or a flight risk, the Court finds that he is being arbitrarily and unjustifiably deprived of his liberty.

The additional procedures afforded under § 1226(a), including an individualized custody redetermination by an immigration judge, *i.e.*, a bond hearing, substantially mitigate the risk of erroneous deprivation of Petitioner's liberty, because those procedures require the government to establish that Petitioner presents a flight risk or danger to the community. This would account for the constitutional requirement that "once the flight risk justification evaporates, the only special

circumstance [ ] present is the alien's removable status itself, which bears no relation to a detainee's dangerousness." Zadvydas, 553 U.S. at 691-92. An adverse decision by an immigration judge in a bond hearing can further be appealed, and Petitioner could seek additional custody redeterminations based on changed circumstances, such that the outcome of a bond hearing would be subject to "numerous levels of review, each offering [Petitioner] the opportunity to be heard by a neutral decisionmaker." Rodriguez Diaz, 53 F.4th at 1210 (finding the bond hearing procedures available through the implementing regulations of § 1226(a) would render "the risk of erroneous deprivation . . . relatively small.") (citation omitted). As such, the second Mathews factor also weighs heavily in favor of granting Petitioner the procedural protections under § 1226(a).

The third and final Mathews factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal aliens" and "securing an alien's ultimate removal," are "interests of the highest order." Rodriguez Diaz, 53 F.4th at 1188-89. These interests are in fact served by the individualized determination by an immigration judge, based on a review of evidence presented by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing removal proceedings, under existing, well-established procedures. In failing to articulate any individualized reason why detaining Petitioner is necessary to enforce immigration law, the question arises "whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." Demore, 538 U.S. at 532-33 (Kennedy, J. concurring). And the government has no interest in the unjustified deprivation of a person's liberty.

Further, the Court finds that limiting the use of detention to only those noncitizens who are dangerous or a flight risk through existing bond procedures serves the government and public's interest by *reducin*g the fiscal and administrative burdens attendant to immigration detention. Hernandez v. Sessions, 872 F.3d 976, 996 (9th Cir. 2017) (Noting in 2017 that "the costs to the public of immigration detention are staggering: $158 each day per detainee, amounting to a total

1  daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17
2  cents and 17 dollars each day per person.").

3  In sum, the Court finds the Mathews factors weigh heavily in factor of Petitioner, and
4  therefore, his detention without the opportunity for release on bond violates his procedural due
5  process rights.

### 2. Substantive Due Process

7  Immigration detention violates the Due Process Clause unless it is ordered in a criminal
8  proceeding with adequate procedural protections, or in non-punitive circumstances "where a
9  special justification . . . outweighs the individual's constitutionally protected interest in avoiding
10 physical restraint." Zadvydas, 533 U.S. at 690.

11 Respondents have asserted no individualized justification—let alone a special or
12 compelling justification—to continue to deprive Petitioner of his physical liberty.  Accordingly,
13 in addition to finding that the challenged regulation violates procedural due process, this Court
14 further finds that Petitioner is currently detained in violation of his substantive due process rights.
15 See Escobar Salgado, 2025 WL 3205356, at *25.

### D. Scope of Relief

17 The federal habeas corpus statute "does not limit the relief that may be granted to discharge
18 of the applicant from physical custody." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). "Its
19 mandate is broad with respect to the relief that may be granted." Id. "It provides that '[t]he court
20 shall . . . dispose of the matter as law and justice require.'" Id. (quoting 28 U.S.C. § 2243).

21 Here, Petitioner faces the specific harm of being detained for months without a bond
22 hearing pursuant to § 1226(a). The Court finds that harm is remedied by ordering a bond hearing
23 by **December 15, 2025**. Given the due process rights at stake, if a bond hearing is not provided
24 promptly within that time frame, Petitioner shall be immediately released until it is determined
25 that his detention is warranted under 8 U.S.C. § 1226(a).

### E. Attorneys' Fees

27 The Court defers on ruling on the matter of attorneys' fees and costs. Should Petitioner's
28 counsel wish to pursue a claim for attorneys' fees and costs under the Equal Access to Justice Act

(EAJA), they are instructed to file a separate motion on the issue in accordance with LR 54-14.

## VI. CONCLUSION

Based on the foregoing **IT IS HEREBY ORDERED** that the Petition (ECF No. 1) is **GRANTED**.

**IT IS FURTHER ORDERED** that Respondents must provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) no later than **December 15, 2025**.

**IT IS FURTHER ORDERED** that Respondents are enjoined from denying Petitioner release on bond on the basis that he is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2).

In the event that bond is granted, Respondents are **ORDERED** to immediately release Petitioner. The Court has received notice of the hardship other petitioners have incurred in their efforts to satisfy bond, and therefore, the Court **FURTHER ORDERS** that Petitioner be afforded 45 days from the date of release to satisfy any monetary bond conditions.

**IT IS FURTHER ORDERED** that if the individualized bond hearing is not conducted by **December 15, 2025**, Petitioner shall be immediately released until it is determined that his detention is warranted under 8 U.S.C. § 1226(a).

**IT IS FURTHER ORDERED** that the parties shall file a status report on the status of Petitioner's bond hearing by **December 16, 2025**. The status report shall detail if and when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

**IT IS FURTHER ORDERED** that Respondents' Motion to Extend Time (ECF No. 6) is **GRANTED**, *nunc pro tunc*.

**DATED:** December 9, 2025.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**